UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HALLMARK CARE SERVICES, INC., a Washington corporation, d.b.a. CASTLEMARK GUARDIANSHIP AND TRUSTS d.b.a. EAGLE GUARDIANSHIP, LORI PETERSEN, and KERRI SANDIFER,<br><br>Plaintiffs,<br><br>v.<br><br>SUPERIOR COURT OF THE STATE OF WASHINGTON FOR SPOKANE COUNTY; SPOKANE COUNTY, WASHINGTON, a political subdivision; PAUL ARTHUR BASTINE; and ANA KEMMERER,<br><br>Defendants. | NO: 2:19-CV-0102-TOR<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Plaintiffs' Motion for Partial Summary Judgment (ECF No. 10), Defendants' Cross-Motion for Summary Judgment (ECF No. 19), and Plaintiff's Motion for Order Vacating Judgments (ECF No. 29). These matters were submitted for consideration without oral argument. The Court has reviewed

the record and files herein, and is fully informed. For reasons discussed below, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment (ECF No. 10) and **GRANTS** Defendants' Cross-Motion for Summary Judgment (ECF No. 19). Plaintiff's Motion for Order Vacating Judgments (ECF No. 29) is **DENIED as moo**t.

**FACTS**

This case arises out of the one-year disciplinary suspension of Lori Petersen, a certified professional guardian ("CPG"). The following facts are undisputed unless otherwise noted.

On March 13, 2015, the Washington Supreme Court issued an order affirming the Certified Professional Guardian Board's ("CPG Board") one-year suspension of Ms. Petersen. ECF No. 1-8 at 4, ¶ 13. The Supreme Court also ordered Ms. Petersen to pay costs to the CGP Board in the amount of $7,500.00. *See* ECF No. 8-1 at 5. At the time of the Supreme Court's order, Ms. Petersen operated as a CPG doing business as Empire Care Services or Empire Care and Guardianship ("Empire"), was also an employee of Hallmark Care Services, Inc. ("Hallmark") and served as a designated CPG for two CPG agencies operated by Hallmark: Castlemark Guardianship and Trust ("Castlemark"), and Eagle Guardianship and Professional Services ("Eagle"). *Id*. at 914-15. On March 26, 2015, the Washington Supreme Court granted a stay of the suspension to allow Ms.

Petersen to work with the CGP Board to ensure her clients were properly transferred to successor certified guardians. *Id*. at 5, ¶ 21.

Thereafter, the Spokane County Superior Court undertook judicial review not only of cases in which Ms. Petersen served as guardian, but also the cases assigned to Hallmark, Castlemark, and Eagle. *Id*. at 7-8, ¶¶ 31-34. On April 7, 2015, Spokane County Superior Court Judge Kathleen O'Connor wrote to Defendants' counsel to inform him that Ms. Petersen's cases, as well as cases associated with Hallmark/Castlemark/Empire, would be transitioned to successor guardians. ECF No. 11 at 6, ¶ 17. That same day, Spokane County Superior Court Judge Ellen Clark signed an order appointing Defendant Paul Bastine ("Bastine") as special master to oversee the transition to and appointment of successor guardians. *Id*. at 7, ¶¶19-20. Judge O'Connor's letter was mailed to Defendants' counsel by Defendant Ana Kemmerer ("Kemmerer"), in her capacity as Guardianship Monitoring Program Coordinator within the Spokane County Court Administrator's Office, along with a copy of the order appointing the special master and two additional letters from Judge O'Connor—one addressed to GALs in Spokane County and another addressed to CPGs informing them of Ms. Petersen's suspension. *Id*. at 6-7; *see* ECF No. 8-1 at 32-45.

On April 10, 2015, Spokane County Superior Court Commissioner Tony Rugel ordered the appointment of a GAL in each of the 125 guardianship actions.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' ~ 3

ECF No. 21 at 9.  Each GAL was instructed to review the guardianship file and recommend an appropriate successor guardian.  *Id*.  In early May 2015, Spokane County Superior Court Commissioners Steven Grovdahl or Tami Chavez held hearings for each of the guardianships.  *Id*. at 9-10.  Following the costly proceedings in which successor guardians were appointed for more than 120 cases assigned to Ms. Petersen and the CGP agencies she was involved with, the Spokane Superior Court assessed costs of the procedure against Ms. Petersen, Hallmark, Castlemark, and Eagle.  Ms. Petersen and the CPG agencies appealed to the Washington Court of Appeals, challenging (1) their removal as guardians, and (2) the assessment of GAL fees against them.

On October 18, 2018, Division Three of the Washington Court of Appeals entered an unpublished opinion reversing the money judgments and remanding all 125 cases back to the Spokane County Superior Court for further proceedings consistent with its ruling.[1]  *See* ECF No. 1-8 at 910-34.  Because the court commissioner previously determined Ms. Petersen and the CPG agencies lacked standing to appeal their removal as guardians, the only issue on appeal concerned

---

[1] Plaintiffs also concede that the "Court of Appeals filed its ruling in each of the one hundred and twenty-four cases in the Washington State Superior Court for Spokane County immediately after releasing its opinion."  ECF No. 7 at 4.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' ~ 4

the judgments assessing GAL fees, specifically: "Whether the superior court violated CR 54(f)(2)[2] and Hallmark's and Ms. Petersen's due process rights when it filed judgments requiring Ms. Petersen and Hallmark to reimburse Spokane County for the GAL fees incurred in each of the cases." *Id*. at 927. The Court of Appeals held that the "entry of the money judgments violated both CR 54(f)(2) and Ms. Petersen's and Hallmark's right to due process." *Id*. at 929. The Court of Appeals then described the proper "procedure on remand," which is worth quoting at length:

> Because our commissioner has dismissed Ms. Petersen's and Hallmark's challenges to the orders removing her and Hallmark's agencies as guardians, we write further to make clear that in any future proceedings, they are free to challenge the assessment of GAL fees (but not the orders removing them as guardians) on the basis that the replacement process followed by the court was not necessary.
>
> \* \* \*
>
> Evidence presented in future proceedings may or may not support the guardian replacement procedure followed by the court and an assessment of fees against Hallmark or Ms. Petersen. We do not prejudge that issue, but want to be clear that our commissioner's decision that the guardian replacement decisions were not before us on appeal does not foreclose Hallmark's challenge to fee assessments based on what it claims was an unnecessary guardian removal procedure. We reverse the money judgments only, and remand for further proceedings consistent with this opinion.
>
> We retain jurisdiction to avoid the administrative inconvenience to the courts and the parties that would be presented should the conduct of further hearings result in over 120 new appeals.

---

[2] CR 54(f)(2) requires five days' notice of presentation of a judgment.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' ~ 5

*Id.* at 20, 24-25.

On March 6, 2019, Plaintiffs filed a collateral and independent Complaint against the Spokane County Superior Court and Spokane County seeking to effectuate the Court of Appeals decision and also seeking damages. ECF No. 1-5 at 1-63 (cause number 19201029-32). On March 18, 2019, Plaintiffs filed an Amended Complaint adding Defendants Paul Bastine (the court appointed Special Master) and Ana Kemmerer (the Guardianship Monitoring Program Coordinator). ECF No. 1-8. Inexplicably in this separate lawsuit, Plaintiffs seek an order to effectuate the Court of Appeals' decision ("[v]acating all money judgments in each of the [remanded] guardianship cases consistent with the ruling by the Court of Appeals") and damages related to the allegedly unconstitutional and unlawful money judgments. *See* ECF No. 1-8 at 1-892. Because the Amended Complaint sought damages under the Fourteenth Amendment to the United States Constitution, Defendants filed a petition to remove the case from state court to federal court on April 1, 2019. ECF Nos. 1; 1-1. In the meantime, Plaintiffs apparently added another purported Plaintiff, Kerri Sandifer, by filing a second amended "Complaint Joinder of Party and Claims" on April 1, 2019. ECF No. 7 at 11-22.

On April 24, 2019, Plaintiffs filed a motion to remand this case back to state court. ECF No. 7. The Court denied the motion on May 31, 2019, holding that

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' ~ 6

Plaintiffs' Complaint and the second amendment to Plaintiffs' Complaint were properly removed to federal court.  ECF No. 25.

On April 30, 2019, Plaintiffs filed a Motion for Partial Summary Judgment on claims 1 through 126 in their Complaint.  ECF No. 10.  Defendants filed a cross-motion for summary judgment on May 21, 2019.  ECF No. 19.  Plaintiffs timely responded to Defendants' motion on June 6, 2019, and subsequently filed a Motion for Order Vacating Judgments on June 13, 2019.  *See* ECF Nos. 27, 29.  The parties' cross-motions for summary judgment, as well as Plaintiff's motion to vacate judgments, are presently before the Court.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court views the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  If the non-moving party lacks support for an essential element of their claim, the moving party is entitled to judgment as a matter of law regarding that claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

At the summary judgment stage, the Court does not weigh the evidence presented, but instead determines whether it supports a necessary element of the

claim. *See id.* To prevail at the summary judgment stage, a party must establish that a fact cannot be genuinely disputed and that the adverse party cannot produce admissible evidence to the contrary. Fed. R. Civ. P. 56(c). Once the moving party has met their burden, the non-moving party must demonstrate that there is probative evidence that would allow a reasonable jury to find in their favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986). The Court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment. *Orr v. Bank of America*, *NT & SA*, 285 F.3d 764 (9th Cir. 2002).

I. **Plaintiffs' Motion for Partial Summary Judgment**

First, Plaintiffs move the Court to grant summary judgment on their federal and state procedural due process claims (Cause of Action 1 through 126 in the Amended Complaint). ECF No. 10; *see* ECF No. 1-8 at 16-201. Plaintiffs argue that summary judgment is appropriate because "the Washington Court of Appeals has already made findings of fact" on the due process issue, "and those findings are res judicata." ECF No. 10 at 16, 21. In response, Defendants assert that Plaintiffs inappropriately seek to import the Court of Appeals decision into the present action, noting that "[a]ppellate reversal on due process grounds does not give rise to a cause of action against the trial court and trial judges." ECF No. 19 at 18-19.

The Court agrees with Defendants. In seeking partial summary judgment of their procedural due process claims, it appears that Plaintiffs' fundamentally

misunderstand the nature of the Court of Appeals' decision, as well as the relief granted. True, the Court of Appeals held that the "entry of the money judgments violated both CR 54(f)(2) and Ms. Petersen's and Hallmark's right to due process" under Washington law. ECF No. 1-8 at 929. However, to remedy that violation, the Court of Appeals reversed the money judgments and remanded for further proceedings consistent with its opinion. *Id*. at 933. Specifically, having concluded that "costs were assessed without due process, including without affording the CPGA an opportunity to challenge facts outside the record on which assessment decisions were based," the Court of Appeals remanded all 125 cases for additional hearings to properly address the issue of GAL fees. *Id*. at 912. Reversal and remand was the appropriate remedy for Plaintiffs' alleged constitutional due process violations. Plaintiffs cannot now split out from their due process appeal a separate damage action in addition to the procedural remedies they are pursuing in state court. Res judicata prohibits Plaintiffs from this claim splitting suit.

Plaintiffs urge this Court to grant summary judgment on their federal and state due process claims because "[t]he Washington State Court of Appeals already determined that the Spokane County Superior acted in violation of the Plaintiff's rights." ECF No. 10 at 21. However, the procedural due process errors Plaintiffs' raise in the instant litigation may be corrected in the remanded state court proceedings or on appeal in state court. Appellate reversal on procedural due

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' ~ 9

process grounds is not a sufficient reason for this Court to grant the relief requested by Plaintiffs in the instant motion, i.e., granting summary judgment on their due process claims. Accordingly, the Court denies Plaintiff's motion for partial summary judgment. ECF No. 10. Plaintiffs' request for attorney fees and costs, both statutory and "equitable," are likewise denied.

**II. Defendants' Cross-Motion for Summary Judgment**

In Defendants' cross-motion for summary judgment, Defendants move the Court for summary judgment dismissal of all of Plaintiffs' claims based on res judicata, judicial immunity, the statute of limitations, and RCW § 4.96.02 (failure to comply with statutory claim filing procedures). ECF No. 19 at 3. The Court considers these arguments below.

**A. Immunity**

"Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986). Judicial acts are those in which a judge is "perform[ing] the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993) (citation and internal quotation marks omitted). Judicial immunity is only overcome if the actions were "nonjudicial actions, i.e., actions not taken in the judge's judicial capacity" or were "actions, though judicial

in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) ("Judicial immunity does not apply to non-judicial acts, i.e. the administrative, legislative, and executive functions that judges may on occasion be assigned to perform.").

Absolute judicial immunity is not reserved solely for judges, but extends to nonjudicial officers for "all claims relating to the exercise of judicial functions." *Burns v. Reed*, 500 U.S. 478, 499 (1991) (Scalia, J., concurring in part and dissenting in part). "'When judicial immunity is extended to officials other than judges, it is because their judgments are "functionally comparable" to those of judges—that is, because they, too, "exercise a discretionary judgment" as part of their function.'" *Duvall*, 260 F.3d at 1133-34 (quoting *Antoine*, 508 U.S. at 436). In the Ninth Circuit, nonjudicial officers that have been extended quasi-judicial immunity include court commissioners and court-appointed special masters. *See O'Neil v. City of Lake Oswego*, 646 F.2d 367, 368 n.2 (9th Cir. 1981) (pro term municipal court judge); *Atkinson-Baker & Assocs., Inc. v. Kolts*, 7 F.3d 1452, 1455 (9th Cir. 1993) (court-appointed special master).

**1. Defendants Spokane County Superior Court and Spokane County**

In the Amended Complaint, Plaintiff alleges that Spokane County Superior Court and Spokane County, acting through its judges and commissioners, violated

Plaintiffs' rights by authorizing and holding hearings which resulted in the removal of Plaintiffs as guardians and the appointment of successor guardians, and thereafter entering judgments assessing GAL fees against Plaintiffs without providing notice or an opportunity to respond. *Id*. at 13-14.[3]

However, while Plaintiffs take issue with the procedure followed by Defendants, the state court had statutory authority to initiate removal proceedings and to assess GAL fees. RCW 11.88.120(1) addresses a court's authority to make changes to a guardianship after it is established, and includes the court's authority to replace a guardian, on the court's own motion, "upon the death of the guardian . . . or for other good reason." Under RCW 11.88.090(10), the fees of a GAL "shall be charged to the incapacitated person unless the court finds that such payment would result in substantial hardship upon such person, in which case the county shall be responsible for such costs." This charging language is subject to the proviso that "the court may charge such fee to the petitioner, the alleged incapacitated person, or any person who has appeared in the action; or may allocate the fee, as it deems just." *Id*.

---

[3] Further, Plaintiffs fail to properly plead liability under *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978), but that issue is mooted by the fact that Defendants are absolutely immune.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' ~ 12

Whether the statutory procedure was fully followed is immaterial to determine whether judicial immunity attaches. As there is statutory authority for the court to initiate removal proceedings and assess GAL fees against Plaintiffs, the Court concludes that Defendants Spokane County Superior Court and Spokane County—acting through their judges and commissioners—acted in a normal judicial function and well within their jurisdiction. Accordingly, the Court finds that Defendants Spokane County Superior Court and Spokane County are entitled to judicial immunity from Plaintiffs' claims. The superior court judges referenced in Plaintiffs' Amended Complaint—Judge O'Connor and Judge Clark—enjoy absolute judicial immunity from Plaintiffs' action, as their acts were "judicial," and they did not act in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). The court commissioners who held the guardianship hearings are also entitled to absolute judicial immunity for their actions, as this circuit's law makes clear that judicial immunity extends to municipal court commissioners. *See O'Neil v. City of Lake Oswego*, 642 F.2d 367, 368 n.2 (9th Cir. 1981).

**2. Defendant Paul Bastine**

The Court finds that Defendant Bastine is protected by absolute quasi-judicial immunity. As noted, the Ninth Circuit has previously held that a special master is immune for actions that are functionally comparable to those of judges,

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' ~ 13

i.e., those functions that involve discretionary judgment. *Atkinson-Baker & Assocs., Inc. v. Kolts*, 7 F.3d at 1455. Here, although Defendant Bastine was not serving as the presiding judge in the state court proceedings, as special master he clearly exercised discretionary judgment as part of his function. The record demonstrates that Defendant Bastine was appointed as special master "to oversee the transition of the 125 cases currently assigned to Ms. Petersen and/or agencies with which she is involved," Defendant Bastine's duties included "report[ing] back to the Court with recommendations as to the appropriateness of the successor certified professional guardians," and his actions in his capacity as special master were therefore judicial acts. *See* ECF No. 8-1 at 34, 44-45. Defendant Bastine's actions were not only discretionary, but also conducted pursuant to a court order. *Id.* at 44-45. He is therefore entitled to absolute judicial immunity from Plaintiff's claims.

### 3. Defendant Ana Kemmerer

Finally, the Court concludes that Defendant Kemmerer, while acting as Guardianship Monitoring Program Coordinator within the Spokane County Court Administrator's Office, performed quasi-judicial functions as to which she is entitled to absolute quasi-judicial immunity. In the Amended Complaint, Plaintiffs allege that Defendant Kemmerer's actions included sending Defendants' counsel several letters from Judge Kathleen O'Connor addressing the guardianship

proceedings, as well as the court order appointing Defendant Bastine as special master. ECF No. 1-8 at 7-8. Plaintiffs also note that after filing a motion for reconsideration of the order appointing the special master, Defendant Kemmerer submitted a declaration in support of court's order. *Id*. at 10.

As noted, quasi-judicial immunity extends to "those actions that are judicial or closely associated with the judicial process." *Mishler v. Clift*, 191 F.3d 998, 1007 (9th Cir. 1999); *Curry v. Castillo*, 297 F.3d 940, 952 (9th Cir. 2002) (absolute quasi-judicial immunity extends to "court clerks and other non-judicial officers for purely administrative acts—acts which taken out of context would appear ministerial, but when viewed in context are actually a part of the judicial function."). Because Defendant Kemmerer's duties and responsibilities are evidently connected with Judge O'Connor and Judge Clark's exercise of the judicial function, the Court concludes that Defendant Kemmerer was evidently assisting both judges in carrying out judicial functions, and is therefore covered by the doctrine of absolute quasi-judicial immunity. *Moore v. Brewster*, 96 F.3d 1240, 1244-45 (9th Cir. 1996).

In sum, the Court finds that Defendants are entitled to judicial immunity from Plaintiffs' claims. Because the Defendants are judicially immune from this suit, the Court does not address Defendants' remaining arguments for summary judgment. Accordingly, the Court grants Defendants' cross-motion for summary

judgment. ECF No. 19. Plaintiffs' claims against Defendants are dismissed with prejudice.

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiffs' Motion for Partial Summary Judgment (ECF No. 10) is **DENIED**.
2. Defendants' Cross-Motion for Summary Judgment (ECF No. 19) is **GRANTED**.
3. The Court dismisses Plaintiffs' claims against Defendants **with prejudice**.
4. Plaintiffs' Motion for Order Vacating Judgments (ECF No. 29) is **DENIED as moot**.

The District Court Clerk is directed to enter this Order, enter Judgment for the Defendants, furnish copies to counsel and **close** the file.

**DATED** June 28, 2019.



THOMAS O. RICE
Chief United States District Judge